Filed 6/13/24  P. v. Love CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B326635 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA138408) |
| v. | |
| DAVAUGHN LOVE, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Appellant. | NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on May 21, 2024, be modified as follows:

1. On page 16, in the first sentence of the first full paragraph, add the word "effectively" after the word "defendant" so the full sentence reads:

Second, defendant effectively argues that the injection of racial bias is inevitable, and hence undue prejudice arising therefrom will always mandate exclusion of rap music videos.

\*      \*      \*

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

ASHMANN-GERST, Acting P. J.  CHAVEZ, J.  HOFFSTADT, J.

Filed 5/21/24  P. v. Love CA2/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B326635 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA138408) |
| v. | |
| DAVAUGHN LOVE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Conditionally reversed and remanded with directions.

Kelly C. Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Davaughn Love (defendant) appeals the trial court's denial, following an evidentiary hearing, of his petition for resentencing under Penal Code section 1172.6.[1]  We reject six of his seven arguments for reversal, but remand for a hearing on whether defense counsel's representation, at the outset of the hearing, that defendant had "waived" his right to appear was based on a voluntary, knowing and intelligent waiver.  If it was, the trial court's denial of relief is affirmed; if it was not, the trial court is directed to conduct a new evidentiary hearing.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

#### A.    *Underlying crimes*

In August 2015, defendant belonged to the "Blocc Crips" gang, which is a subset of the "Rolling 100s" gang.  The month before, a prominent member of the Rolling 100s gang was gunned down, and the Rolling 100s—and their affiliates—openly declared war on all rival gangs; they called it "100 Days, 100 Nights."  The Hoover Criminals gang was one of those rival gangs.

On August 11, 2015, defendant and his fellow Blocc Crips gang member Antwoine Vaughn (Vaughn) asked their friend

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). We therefore refer to the law formerly codified at section 1170.95 as section 1172.6.

2

Timothy Boykins (Boykins) if they could use his car to drive into Hoover Criminals territory. When Boykins declined, defendant and Vaughn decided that (1) defendant would drive Vaughn in a white Dodge Magnum registered to Nichelle Carter (Carter), a woman with whom defendant was in a relationship (rather than in the Audi defendant owned in his own name); and (2) Boykins would follow them separately in his own car, so he could videotape their exploits.

When they arrived in Hoover Criminals territory, defendant pulled up alongside Akeem Bladen (Bladen), his girlfriend, and their two children, who were all walking on the sidewalk. Bladen was not a gang member, and did not know defendant or Vaughn. Defendant stopped the car, and Vaughn got out and approached Bladen. After asking each other, "What's up?" Vaughn immediately opened fire, shooting Bladen in the back of the leg. When Bladen tried to get away by running across the adjacent intersection, Vaughn continued to shoot him from behind, even after Bladen fell to the ground and continued to crawl away. Vaughn ultimately unloaded 10 bullets into Bladen—in his head, chest, hand, and leg. Miraculously, Bladen survived. Vaughn was shooting "wildly," and three other bullets he shot struck a passing car. Defendant waited for Vaughn to finish his rampage and get back into the car, and then drove off with him.

The following day, defendant texted Vaughn to remind him to "move" his gun. He signed off the message with "HK," which a gang expert explained is short for "Hoover Killer."

In an October 2015 jailhouse call, defendant and others discussed the shooting and defendant did not deny his "involvement."

3

**B.** *Prosecution, conviction, and appeal*

The People charged defendant with (1) the attempted premeditated murder of Bladen (§§ 187, subd. (a), 664), and (2) shooting at the occupied vehicle (§ 246). The People further alleged that these crimes were committed "for the benefit of, at the direction of, or in association with" a criminal street gang (§ 186.22, subd. (b)(4)), and that a principal discharged a firearm causing great body injury (§ 12022.53, subds. (d) & (e)(1)). The People additionally alleged that defendant had two prior "strike" convictions within the meaning of our "Three Strikes" law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)).

Defendant and Vaughn were tried together, but before separate juries. The trial court instructed defendant's jury that defendant could be found guilty of attempted premeditated murder if defendant (1) directly aided and abetted Vaughn in committing attempted murder; or (2) aided and abetted Vaughn in committing assault or conspiracy to commit assault, if attempted murder was a natural and probable consequence of those lesser crimes.

A jury convicted defendant of both crimes and found all enhancement allegations to be true.

The trial court sentenced defendant to prison for 47 years to life, comprised of seven years to life for the attempted murder, 25 years to life for the discharge of a firearm, and 15 years to life for the shooting at an occupied vehicle—all to run consecutively.

**II. Procedural Background**

On September 18, 2019 and October 7, 2019, defendant filed two separate petitions for resentencing under section 1172.6.

After multiple appeals and remands occasioned by changes in the law, the trial court set the matter for an evidentiary hearing. The court held the hearing on October 31, 2022, at which the parties elected to rely on the trial record and did not introduce any new evidence.

The trial court denied relief, finding that the People had proven defendant guilty of attempted murder under a currently valid theory beyond a reasonable doubt.

Defendant filed this timely appeal.

## DISCUSSION

Defendant raises seven challenges to the trial court's denial of his section 1172.6 petition. We consider each in turn.

## I. Insufficient Record of Waiver of Defendant's Presence

When defendant did not appear at the evidentiary hearing despite the trial court's issuance of an order to the prison to allow him to participate remotely, the trial court asked defendant's attorney whether defendant had "waived his appearance for these purposes." The attorney responded, "Yes," but there was no further discussion of the issue.

Defendant argues that this was error because the record does not affirmatively demonstrate the validity of defendant's waiver. To be valid, a criminal defendant's waiver of his presence at trial must be "voluntary, knowing and intelligent." (*People v. Davis* (2005) 36 Cal.4th 510, 531.) What is more, when a defendant's lawyer communicates the defendant's waiver of his presence (rather than the defendant personally making the waiver), "there must be some evidence" in the record "that [the] defendant understood the right [to be present that] he was waiving and the consequences of doing so." (*Id.* at p. 532.)

5

In the brief exchange between the trial court and defendant's lawyer in this case, defendant's lawyer did not relay that he had informed defendant of his right to attend the evidentiary hearing or described to defendant the consequences of not attending.  Consequently, and as the People concede, the waiver is not valid on the record before us.

However, because defendant's attorney in this case indicated that defendant "waived" his right—rather than counsel merely asserting that he was appearing on his client's behalf (*People v. Quan* (2023) 96 Cal.App.5th 524, 535) or that the client had no right to appear that necessitated a waiver (*People v. Basler* (2022) 80 Cal.App.5th 46, 59-60)—the defect here is not the total absence of a waiver; instead, we are confronted with an inadequate record by which to assess whether the waiver was voluntary, knowing and intelligent.  As a result, we remand to the trial court to assess whether defendant's attorney's prior indication of "waiver" was made while defendant was aware of his right to appear and of the consequences of failing to appear.  If the waiver was voluntary, knowing and intelligent—and hence was valid—the court's order denying relief under section 1172.6 shall remain in force (in light of our resolution of the other issues below); but if the waiver was not voluntary, knowing and intelligent—and hence was invalid—then the denial of relief must be vacated and defendant must be accorded a new evidentiary hearing.

## II.    Reliance on Evidence Inadmissible Under Confrontation Clause

Defendant argues that the trial court erred in relying on testimony given by Carter that (1) she was defendant's wife on the day of the shooting; and (2) defendant approached her that

day to use the white Dodge Magnum, which was registered to her. However, Carter's testimony was admitted at trial *only* against Vaughn (and thus only heard by Vaughn's separate jury); it was inadmissible against defendant because Carter had invoked her spousal privilege not to testify. Because a trial court conducting an evidentiary hearing under section 1172.6 may only consider evidence that was "previously admitted at any prior . . . trial" or "is admissible under current law" (§ 1172.6, subd. (d)(3)), the trial court erred in resting its implicit finding that defendant acted with the requisite intent to kill partly on the fact that defendant "us[ed] his wife's car" rather than his own car—which tended, in the court's view, to show that defendant knew in advance of the grave nature of what he and Vaughn were about to do. The People concede error.

Because we exercise our discretion to overlook defendant's forfeiture of this issue, our analysis comes down to whether the trial court's error was harmless beyond a reasonable doubt (due to the Confrontation Clause implications) (see *People v. Burney* (2009) 47 Cal.4th 203, 232), and whether the error was reasonably likely to result in a different outcome (due to the statutory error in admitting the evidence) (*People v. Clark* (2021) 62 Cal.App.5th 939, 968). We conclude that the error is not reversible because the trial court's consideration of Carter's testimony was harmless beyond a reasonable doubt for two reasons.

First, Carter's testimony itself adds very little beyond the evidence properly considered from defendant's trial. Carter's testimony that she was his *wife* is of little consequence because the jury elsewhere heard that she was in a "relationship" with him; the precise nature of that relationship adds little. Moreover,

7

Carter's testimony that defendant asked her to use her Magnum prior to the shooting—from which the trial court inferred that he had "switched cars" and hence was trying to avoid detection because he was about to commit a very serious crime—is also of little consequence because the jury elsewhere heard that defendant opted to drive a Magnum not registered in his name rather than the Audi registered in his name, which gives rise to the *same* inference that defendant tried to avoid detection because he was about to commit a very serious crime.

Second, the evidence regarding defendant's efforts to avoid detection was but a sliver of the much larger pie of evidence that the trial court relied upon to find that defendant acted with the intent to kill. In totality, the trial court relied upon evidence that (1) defendant had a motive to kill people he believed to be rival gang members—specifically, (a) the ongoing "100 Days, 100 Nights" feud, and (b) a rap music video made within six weeks before or after Bladen's shooting, which referred to sadness at the death of the Rolling 100s gang member as well as the need for retaliation, and which featured Vaughn pretending to shoot people and prepping a gun while in the passenger seat of a car; (2) defendant took actions in advance of the shooting that indicate an intent to avoid detection for a more severe crime— specifically, defendant drove the Magnum that was owned by Carter rather than the Audi owned in his name; (3) defendant and Vaughn planned to commit a shooting rather than a fistfight—specifically, (a) only Vaughn exited the car, which seems more consistent with a plan that Vaughn be a shooter rather than a pugilist (where Vaughn might need defendant as backup), and (b) defendant and Vaughn asked Boykins to trail them in a separate car that could act as a diversion after the

8

shooting; (4) defendant took actions during the incident indicating his foreknowledge that it would involve a shooting rather than a fistfight—namely, defendant waited in the Magnum for Vaughn to fire off numerous shots; (5) defendant reminded Vaughn after the shooting to get rid of the gun; and (6) defendant failed to deny involvement in the shooting during the October 2015 jail call. All of this evidence was properly admitted at the trial and exists *independently* of Carter's testimony; the trial court's erroneous reliance on Carter's testimony was accordingly harmless beyond a reasonable doubt.

Defendant resists this conclusion with three arguments. First, he argues that the sole evidence that Carter was his "wife" was her testimony. This is true, but the exact legal status of their relationship is of little import for the reasons explained above. Second, he argues that it was "not unusual" for him to drive the Magnum, but the frequency with which defendant chose to drive the Magnum does not negate the importance of the fact that he specifically decided to drive a vehicle not registered in his name to the shooting. Third and lastly, defendant argues that, absent Carter's testimony that the Magnum defendant drove that day was *hers*, there is insufficient evidence that the Magnum did not belong to him. But there is no evidence of anyone else involved in the shooting owning a white Dodge Magnum.

## III. Prosecutorial Error

Defendant argues that the prosecutor impermissibly referred to evidence never introduced at trial or at the evidentiary hearing—namely, that defendant and his wife "switched [cell] phones" prior to the shooting. To be sure, a prosecutor errs by "misstat[ing] the evidence or go[ing] beyond the record." (*People v. Fayed* (2020) 9 Cal.5th 147, 204.) Here,

9

the evidence indicated that Carter had two phones registered to her—one that *she* used, and one that *defendant* used. There was no evidence that Carter and defendant "switched phones" on the day of the shooting. Thus, the prosecutor committed error. The People concede as much.

Because we exercise our discretion to overlook defendant's forfeiture of this issue, our analysis once again comes down to whether this error was harmless beyond a reasonable doubt (to the extent it implicates the federal due process protection against prosecutorial error) or whether the error was reasonably likely to result in a different outcome (to the extent it implicates merely the state due process protection). (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 564.)

Although the trial court recited the prosecutor's misrepresentation that Carter and defendant switched phones as one of the court's many reasons for finding defendant harbored an intent to kill, the prosecutor's error was harmless beyond a reasonable doubt for two reasons.

First, whether defendant "switched phones" is pertinent to whether he was trying to avoid detection due to the more egregious nature of the crime he was planning to commit, which tends to show he and Vaughn were intending to kill rival gang members rather than assault them. As noted above, however, the evidence that defendant drove a car not registered in his name rather than one traceable to him establishes that very same inference.

Second, whether defendant took actions to avoid detection is just one of the many categories of evidence—all described above—that overwhelmingly support the trial court's finding that defendant acted with the intent to kill.

10

Defendant's chief rejoinder is that the trial court's citation of this nonexistent evidence means that it "influenced the court's ruling" and mandates reversal because "there is no way to know how heavily the court weighed that factor." Accepting this argument would mean that reversal would always be required whenever a trial court relies in part on a prosecutor's misstatement of the evidence. That is not the law. Instead, the law requires us to evaluate whether the remaining evidence on the point at issue is so overwhelming in quantity or quality that the trial court's reliance on the prosecutor's misstatement was harmless beyond a doubt. That is the analysis we have undertaken.

## IV.    Trial Court's Violation of Jury Instruction

In independently assessing whether defendant acted with the intent to kill, the trial court was obligated to follow CALCRIM No. 224—the instruction that obligates a trier of fact able to "draw two or more reasonable conclusions from the circumstantial evidence," when "one of those reasonable conclusions points to innocence and another to guilt," to "accept the one that points to innocence." (CALCRIM No. 224.) Defendant urges that the trial court erroneously disregarded this instruction when it (1) rejected Boykins's testimony that the plan was to commit a "beatdown" (the reasonable conclusion favoring innocence) in favor of the inference that Boykins had accompanied them in a separate car to provide a diversion (the reasonable conclusion favoring guilt); and (2) rejected the People's gang expert's testimony that the letters "HK" used by defendant to sign off the post-shooting text message did not "relate[] to the shooting itself" (the reasonable conclusion favoring innocence) in favor of the inference that "HK" is an

11

acronym for "Hoover Killer" and hence is evidence of defendant's motive (the reasonable conclusion favoring guilt).

We independently determine that the trial court did not err.

With respect to the first point, the trial court was not confronted with a conflict between Boykins's testimony and a competing inference. That is because the trial court *disbelieved* Boykins's explanation that the plan was merely to assault rival gang members; the court observed that it was not "just automatically" going to "believe everything [Boykins] says." To the extent defendant suggests that a trial court must always find witnesses credible when assessing whether there are conflicting inferences under CALCRIM No. 224, we reject that suggestion because it flies in the face of the settled rule that assessing witness credibility is inherently within the province of the trier of fact. (*People v. Mumin* (2023) 15 Cal.5th 176, 202.) With respect to the second point, the trial court did not face conflicting inferences necessitating resort to CALCRIM No. 224. The expert's testimony that "HK" did not "relate[]" to Bladen's shooting and hence was not an admission to Bladen's shooting does not conflict with the trial court's assessment that defendant's use of an abbreviation for "Hoover Killer" still constituted evidence of *his motive* for shooting people he believed to be Hoover Criminals gang members.

## V.    Procedural Error

Defendant argues that none of the trial exhibits—specifically, the post-shooting text message, the rap music video, and the jailhouse call—were formally admitted into evidence *at the evidentiary hearing*, and thus cannot support the trial court's denial of his section 1172.6 petition. He is wrong. The plain text

12

of section 1172.6 states that "[t]he admission of evidence in the [evidentiary] hearing shall be governed by the Evidence Code, *except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law . . .* ." (§ 1172.6, subd. (d)(3), italics added.)  This italicized language provides that the evidence "previously admitted at . . . trial"— which in this case indisputably includes the trial exhibits—may be considered at the evidentiary hearing; nothing in the statute requires formal re-admission of that evidence during the evidentiary hearing.  We decline to create an additional procedural step obligating the trial court to utter the magic words "I re-admit this" in order to recognize evidence that is already part of the record of conviction.  That would elevate form over substance and turn section 1172.6 proceedings into a game of procedural "gotcha."

## VI.   Admission of Rap Music Video

Defendant argues that the trial court erred in relying on the rap music video in assessing whether defendant acted with the intent to kill because Evidence Code section 352.2 altered the standard by which the admission of such evidence is considered. The parties argue at length about whether Evidence Code section 352.2 applies "retroactively," and the question of retroactivity is a complex one in this case:  Section 1172.6 provides that a trial court at an evidentiary hearing "may consider evidence previously admitted at any prior hearing or trial that is admissible *under current law*" (§ 1172.6, subd. (d)(3), italics added), and section 352.2 was *enacted* but was not yet *effective* at the time of defendant's evidentiary hearing.  We need not address the question of the applicability of Evidence Code section 352.2 because, even if we assume it is retroactively applicable in this

13

case, the trial court did not abuse its discretion in admitting the rap music video under the new standard.

Evidence Code section 352.2 effectively modifies the default standard for assessing whether the probative value of proffered evidence is substantially outweighed by the danger of undue prejudice set forth in Evidence Code section 352. (Compare Evid. Code, § 352.2 with *id.*, § 352.) More specifically, section 352.2 makes two modifications pertinent to this case. First, it dictates that the "probative value" of any "form of creative expression"— which indisputably includes the rap music video at issue in this case—"is minimal" *unless* it was (1) "created near in time to the charged crime or crimes," (2) "bears a sufficient level of similarity to the charged crimes or crimes," or (3) "includes factual detail not otherwise publicly available." (Evid. Code, § 352.2, subd. (a).) Second, it explains that "undue prejudice" "includes, but is not limited to," (1) "the possibility that the trier of fact will . . . treat the expression as evidence of the defendant's propensity for violence or general criminal disposition," and (2) "the possibility that the evidence will explicitly or implicitly inject racial bias into the proceedings." (*Ibid.*)

The trial court's consideration of the rap music video in this case was proper because the court would have acted within its discretion in admitting it under Evidence Code section 352.2. Although the new statute deems the probative value of creative expression to be "minimal" except in three circumstances, two of those circumstances are present here: The video was "created near in time to the charged" murder on August 11, 2015 because the video was necessarily made between July 17, 2015 (the date the prominent Rolling 100s member was gunned down, as he was referred to in the video), and September 28, 2015 (the date

14

defendant, who appeared in the video, was arrested); the video also "bears a sufficient level of similarity to the charged" murder because it features Vaughn mimicking shooting and shows him loading a gun while in the passenger seat of a car, which is where Vaughn sat prior to getting out to shoot Bladen.  Because the video is not deemed to have "minimal" probative value, its probative value in helping to establish defendant's motive and either a plan to kill (if it was made *before* the shooting) or a memorialization of a past killing (if it was made *after* the shooting) is not insignificant.  And although there is some undue prejudice as defined by Evidence Code section 352.2 because there is always a "possibility" a video might be misused as evidence of propensity and a "possibility" of injecting racial bias into the proceedings, the trial court here explained *why* it found the video to be probative—and its reason did not include either of those unduly prejudicial reasons.  Thus, the court would not have abused its discretion in concluding that the probative value of the video was not substantially outweighed by the danger of unfair prejudice.

Defendant responds with what boils down to three arguments.

First, he argues that Evidence Code section 352.2 dictates a finding that the probative value of the video is "minimal" because (1) it was not made close in time; and (2) it is insufficiently similar to the shooting of Bladen because (a) Vaughn only *pretended* to shoot the gun he wielded in the video, and (b) Vaughn was depicted pretending to shoot at people *in a crowd*, while Bladen was only with his girlfriend and their children when the shooting started and then moved away from them as the shooting continued.  In our view, plus or minus six weeks on

15

either side of the shooting *is* close in time. Further, we do not construe Evidence Code section 352.2 as requiring the level of similarity necessary to show identity or modus operandi. The trial court relied on the video as evidence of defendant's *motive*, and the video is sufficiently similar to the charged attempted murder to prove motive as it refers to the recent death of a Rolling 100s member and refers to retaliation involving depictions of gunplay.

Second, defendant argues that the injection of racial bias is inevitable, and hence undue prejudice arising therefrom will always mandate exclusion of rap music videos. We reject this reading of Evidence Code section 352.2 because the statute does not call for—yet it could have called for—blanket exclusion of such evidence; instead, it calls upon courts to engage in a more finely tuned balancing.

Third and lastly, defendant argues that the trial court mistakenly believed that defendant was in the driver's seat of the car during the video. But this mistake does not bear on the reason why the trial court relied on the video—to show *motive* for the killing.

## VII. Cumulative Error

Defendant lastly argues that the trial court's errors, when considered cumulatively, necessitate reversal. Although courts may consider whether "errors that are individually harmless may . . . have a cumulative effect that is prejudicial" (*In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32, dis. opn. of Mosk, J.), the two errors in this case—namely, the trial court's erroneous reliance on Carter's testimony regarding she and defendant "switching cars" and the prosecutor's erroneous reference to "switching

16

phones"—do not cumulatively call into question the overwhelming other evidence of defendant's intent to kill.

## DISPOSITION

We conditionally reverse the order denying relief under section 1172.6, and remand for the trial court to determine whether defendant voluntarily, knowingly and intelligently waived his right to be present at the October 31, 2022 evidentiary hearing. If there is a valid waiver, the order denying relief is otherwise valid and is affirmed. If there is not, the trial court must conduct a new evidentiary hearing.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.

HOFFSTADT

We concur:

_____, Acting P. J.

ASHMANN-GERST

_____, J.

CHAVEZ

17